OPINION
{¶ 1} Plaintiff-appellant, Stephanie E. Basford, appeals from a Noble County Common Pleas Court decision terminating a shared parenting plan and designating defendant-appellee, Bradley Basford, the residential parent of the parties' minor son.
 {¶ 2} The parties were married on January 1, 1995, and one child was born of the marriage, Damieon Joseph (d.o.b. 7/11/1995). The trial court granted the parties a divorce on February 8, 1999 and adopted a shared parenting plan as agreed to by the parties. Under the plan, appellant was designated Damieon's primary residential parent and appellee was to have standard visitation and pay child support. The court specifically found both parties were "fit and proper persons to be designated as the residential and custodial parents" for Damieon. (February 8, 1999 Judgment Entry).
 {¶ 3} Since the divorce, both parties have moved from Noble County. Appellant currently lives in Columbus, Ohio while appellee resides in Hartsville, Tennessee. On July 16, 2003, appellee filed a motion to modify the shared parenting plan or to terminate the shared parenting plan and name him as the primary residential parent. The court held a hearing on the motion where it heard testimony from both parties and other witnesses. On September 5, 2003, the court granted appellee's motion, terminated the shared parenting plan, and named appellee as Damieon's residential parent. Upon appellant's request, the court issued findings of fact and conclusions of law on September 19, 2003. The findings of fact and conclusions of law reveal the trial court primarily based its decision on two situations: (1) Damieon's excessive absenteeism and numerous schools, and (2) a car accident involving appellant, Damieon, and appellant's boyfriend, Keith Hiatt, in which appellant placed Damieon in the car with Hiatt while Hiatt was intoxicated.
 {¶ 4} Appellant also filed various other motions including a motion for stay, a motion for reconsideration, a motion for the court to provide a summary of Damieon's in-chamber interview, a motion to have both parties and the child interviewed by a psychologist, and a motion to permit her to file Damieon's hospital records or to take the deposition of Damieon's physician in order to verify the child's migraine headaches. Appellant then filed her timely notice of appeal on September 11, 2003. This court granted a stay of the trial court's decision pending appeal and gave this case expedited status.
 {¶ 5} Next, appellant filed a Civ.R. 60(B) motion in the trial court and a motion for a change in custody. This court issued a limited remand for the trial court to rule on (1) child support, which was left unresolved and (2) appellant's Civ.R. 60(B) motion. On January 13, 2003, the trial court issued its judgment pursuant to our remand. It set child support and denied appellant's motion for relief from judgment.
 {¶ 6} Appellant now raises four assignments of error, the first of which states:
 {¶ 7} "A TRIAL COURT ABUSES ITS DISCRETION WHEN A CUSTODIAL PARENT OF EIGHT YEARS, WITHOUT [sic.] LITTLE INTERVENTION OF THE NATURAL FATHER, REQUESTS THAT THE RECORD BE KEPT OPEN, AT A CHANGE OF CUSTODY HEARING, TO MAKE SURE THE COURT RECEIVES ALL OF THE EVIDENCE."
 {¶ 8} Appellant testified at trial that Damieon is seeing a neurologist because he suffers from migraine headaches. (Tr. 69). In response to a question about Damieon's absenteeism, appellant stated that Damieon was on seven different medications. (Tr. 18). She indicated that the neurologist would send all of Damieon's records if she was permitted to submit them to the court. (Tr. 69). At the conclusion of the hearing, appellant requested that the court keep the record open so that she could later submit Damieon's hospital records. Appellant claims this was necessary so that she could show that Damieon suffers from migraine headaches. These headaches, she claims, are the reason why Damieon has missed so much school. The court denied her request.
 {¶ 9} Appellant argues it was error for the court to not allow her to supplement the record with Damieon's hospital records. She attached the records to her appellate brief. However, as they are not part of the record, we cannot consider them now.
 {¶ 10} Whether to admit or exclude evidence is a matter within the trial court's discretion. Rigby v. Lake Cty. (1991),58 Ohio St.3d 269, 271. An appellate court will not reverse the trial court's decision to admit or exclude evidence absent an abuse of discretion. Id. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1982), 5 Ohio St.3d 217, 219.
 {¶ 11} Appellant had sufficient time to gather any medical records she wished to submit. Appellee filed his motion for a change of custody on July 16, 2003. In his motion, appellee stated that one of the reasons he sought a change in custody was because Damieon "has had significant problems with school attendance and school performance." Thus, appellant knew that appellee would argue that Damieon's poor attendance was one reason why he should be awarded custody. The court did not hold a hearing until August 20, 2003. Thus, appellant had over a month to assemble any medical records she wished to submit in order to refute appellee's claim. Therefore, the trial court did not abuse its discretion in disallowing appellant to later supplement the evidence with the records. Accordingly, appellant's first assignment of error is without merit.
 {¶ 12} Appellant's second assignment of error states:
 {¶ 13} "EVIDENCE OF AN AUTOMOBILE ACCIDENT, AND A CITATION ARISING THEREFROM, WHICH HAD NEVER BEEN ADJUDICATED, SHOULD NOT HAVE BEEN ADMITTED IN A CHANGE OF CUSTODY, WHEN SUCH EVIDENCE WOULD NOT BE PERMISSIBLE PRESENTLY."
 {¶ 14} At the hearing, the court listened to testimony regarding an automobile accident involving appellant, Damieon, and appellant's boyfriend, Keith Hiatt. State Highway Patrol Trooper Anne Ralston testified that on May 2, 2003, she investigated a one-car automobile accident involving Hiatt. (Tr. 3-4). She stated that Hiatt's car ran off the right side of the road, over corrected, came back across the center line, went into a ditch, flipped, and came to rest on its top. (Tr. 4). Trooper Ralston testified that Hiatt, appellant, and Damieon had been in the car at the time of the accident. (Tr. 5). She testified that Hiatt was significantly injured, had to be taken from the scene by ambulance, and was later life-flighted to Ohio State University Medical Center. (Tr. 6, 8). She further stated that appellant claimed to be uninjured and that Damieon had a possible injury. (Tr. 6). The possible injury to Damieon was that Trooper Ralston noticed a "goose egg" on his forehead. (Tr. 6).
 {¶ 15} Trooper Ralston also testified that she first suspected Hiatt was intoxicated when she spoke with him at the scene and detected a strong odor of an alcoholic beverage coming from him. (Tr. 7). Upon her suspicion, Trooper Ralston questioned Hiatt at the hospital. When she questioned him, she still detected a strong odor of an alcoholic beverage and noticed that Hiatt slurred his speech. (Tr. 8). Due to the time lapse since the accident, Trooper Ralston could not take her own blood sample from Hiatt. (Tr. 8). So she subpoenaed the hospital blood test results. (Tr. 8). Because of her investigation, Trooper Ralston charged Hiatt with, among other things, driving under the influence and child endangerment. (Tr. 9). She also filed charges against appellant for child endangerment. (Tr. 9).
 {¶ 16} Appellant also testified regarding the accident. She stated that, on the day of the accident, Hiatt had been out with friends. (Tr. 74). She stated he returned home and they decided to go to McDonald's. (Tr. 74). Appellant claimed she did not have any knowledge or suspicion that Hiatt had been drinking that day. (Tr. 74, 80). She stated she had heard that Hiatt's test results revealed a .202 blood alcohol level and that he tested positive for marijuana. (Tr. 80). Appellant admitted that she had been charged with child endangerment. She testified that she entered a not guilty plea and stated that the case had not yet gone to trial. (Tr. 30-31). She claimed that Damieon was not injured in the accident and denied that he had a goose egg on his head. (Tr. 31).
 {¶ 17} Appellant argues the court erred in considering this evidence. She claims that since the hearing, she has disposed of her citation in a manner so that it cannot be used against her in any civil proceedings. She also asserts that her testimony indicated that she was unaware of Hiatt's condition when she allowed Damieon to ride in the car with him. (Tr. 74).
 {¶ 18} Appellant did not object to the evidence of the car accident or the charge against her at trial. While her counsel noted in his closing argument that he had objected to this evidence in chamber, there is no record of the in-chamber discussion. Therefore, she has waived this issue on appeal absent plain error. Plain error is one in which but for the error, the outcome would have been different. State v. Long (1978),53 Ohio St.2d 91, 97.
 {¶ 19} Generally, all relevant evidence is admissible. Evid.R. 402. Relevant evidence is any evidence tending to make a fact at issue more or less probable than without that evidence. Evid.R. 401. As stated above, a trial court has broad discretion in determining the admissibility of evidence and we will not reverse its decision absent an abuse of that discretion. Rigby,58 Ohio St.3d at 271.
 {¶ 20} The evidence of the accident and the charge against appellant were certainly relevant in the court's determination of Damieon's best interest, regardless of the outcome of the charge. At the time of the hearing, appellant was charged with child endangerment. She had not yet resolved this charge. The court was in a position to consider the evidence and give it the appropriate weight while taking into consideration the fact that appellant had not yet resolved the charge against her. Thus, even if appellant had objected, the trial court still acted within its discretion in considering the evidence of the accident and the child endangerment charge against appellant. Accordingly, appellant's second assignment of error is without merit.
 {¶ 21} Appellant's third assignment of error states:
 {¶ 22} "WHEN A TRIAL COURT ORDERS A CHANGE OF CUSTODY TO A NATURAL PARENT WHO LIVES IN A FOREIGN STATE WHO HAD NO RELATIONSHIP WITH THAT PARENT [sic.], AND DECISION, WITHOUT PROFESSIONAL INTERVENTION, WOULD BE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 23} Appellant asserts that the court should not have made a decision without ordering an expert evaluation of Damieon. She further contends that the court's decision was against the manifest weight of the evidence. For support, she claims the evidence clearly showed that appellee abuses alcohol, did not pay his child support, lives seven hours away from her, and has had little or no visitation with Damieon.
 {¶ 24} A trial court's decision regarding the custody of a child that is supported by competent and credible evidence will not be reversed absent an abuse of discretion. Bechtol v.Bechtol (1990), 49 Ohio St.3d 21, syllabus; Rohrbaugh v.Rohrbaugh (2000), 136 Ohio App.3d 599, 603. A trial court has broad discretionary powers in child custody proceedings.Reynolds v. Goll (1996), 75 Ohio St.3d 121, 124. This discretion should be accorded the utmost respect by a reviewing court in light of the gravity of the proceedings and the impact that a custody determination has on the parties involved.Trickey v. Trickey (1952), 158 Ohio St. 9, 13.
 {¶ 25} A court may terminate a prior final shared parenting decree upon the request of one or both parents whenever it determines that shared parenting is not in the child's best interest. R.C. 3109.04(E)(2)(c). Upon termination of a prior final shared parenting decree under R.C. 3109.04(E)(2)(c), the court shall issue a modified decree for the allocation of parental rights and responsibilities for the care of the child as if no decree for shared parenting had been granted and as if no request for shared parenting had ever been made. R.C.3109.04(E)(2)(d).
 {¶ 26} When making an allocation of parental rights and responsibilities, the court shall take into account the child's best interest. R.C. 3109.04(B)(1). In determining the child's best interest, the court must consider all relevant factors, including, but not limited to:
 {¶ 27} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 28} "(b) If the court has interviewed the child in chambers * * * the wishes and concerns of the child, as expressed to the court;
 {¶ 29} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 30} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 31} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 32} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 33} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 34} "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving [a child being abused or neglected or a domestic violence offense]; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 {¶ 35} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 36} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state." R.C. 3109.04(F).
 {¶ 37} In its findings of fact and conclusions of law, the trial court examined each of these factors and noted the following:
 {¶ 38} Each parent genuinely desires to be the custodial parent.
 {¶ 39} The court interviewed Damieon in chambers. It noted that more than once, Damieon said that he wanted to live with appellant, which the court found curious since it never asked him who he wanted to live with. Damieon referred to appellee as a "bad person." As to the automobile accident, Damieon stated that appellant remarked about the knot on his head. The court found that the interview with Damieon was of marginal value. It noted that Damieon's reasoning ability was an issue and it was "more than a little concern[ed]" that Damieon was repeating what others had said instead of what he felt.
 {¶ 40} The court noted that Damieon had interacted more with appellant than with appellee. And there was little evidence of interaction with other family members.
 {¶ 41} As to Damieon's adjustment, the court found that he has never had a chance to adjust to a school, home, or community. In its findings, the court noted Damieon's various schools and addresses as follows: (1) during kindergarten Damieon lived in Macksburg, Ohio and attended Caldwell Elementary; (2) during first grade (the first time) Damieon lived in Belmont County and attended Barnesville Elementary; (3) during first grade (the second time) Damieon lived in Summerfield, Ohio and attended Shenandoah Elementary; and currently (4) Damieon lives in Columbus and is registered for second grade at Etna Road Elementary. The court found that there is no reason to believe appellant's residence in Columbus will be any longer than those in the past.
 {¶ 42} The court found no mental or physical problems with either party.
 {¶ 43} The court remarked that appellee would be more likely to honor and facilitate visitation. It noted that during the hearing, the parties' attorneys were trying to arrange some visiting time with appellee, who had traveled from Tennessee. The court observed that appellant wanted Damieon to decide whether or not to see his father.
 {¶ 44} As to child support, the court found that while appellee was initially delinquent in support payments, he had been current for the last two-and-a-half years.
 {¶ 45} The court found that while neither parent had been convicted of a criminal offense involving a child being abused or neglected, appellant knowingly placed Damieon in a vehicle operated by an intoxicated driver. Thus, the court concluded that she gave reason for it to believe she acted in a manner that could result in Damieon being abused or neglected. The court found that this apparent lack of concern for Damieon's safety caused it "grave concern" as to appellant's parenting.
 {¶ 46} While it found that neither parent had continuously and willfully denied parenting time to the other, the court stated it was obvious that appellant does not encourage interaction between Damieon and appellee.
 {¶ 47} Finally, the court noted that appellee has established a home in Tennessee, which appeared to be good and stable. It found that appellee's home was probably more likely to provide stability for Damieon than appellant's home.
 {¶ 48} In addition to the statutory factors, the court considered other factors, which are all supported by the record. The court also recognized it was to consider appellant's status as the primary caretaker as an additional factor.
 {¶ 49} Regarding appellee, the court noted that immediately following the divorce, appellee's visitation and child support payments were sporadic. (Tr. 69, 71, 73-74). It also noted that at that time, appellee consumed alcohol and had a DUI conviction. (Tr. 50-51, 56). The court noticed a turnaround in appellee's life, however, after he moved to Tennessee in March of 2000. Since then appellee has been employed in a relative's construction firm and has been substantially current in his child support. (Tr. 38-39, 49). Appellee has also remarried and has a baby with his new wife. (Tr. 37, 39). The court also noted that appellee has not consumed alcohol for over a year. (Tr. 51). Additionally, it found that appellee has taken a more active role in Damieon's life, including a period over summer vacation when Damieon stayed with appellee. (Tr. 44-46). Importantly, the court found that appellee was a credible witness.
 {¶ 50} Concerning appellant, the court noted that she has been Damieon's primary caretaker. It noted that appellant resides with her boyfriend and her grandmother. (Tr. 12). The court found that while Damieon is an average to above average student, his school attendance has been "horrendous." Damieon missed 45 days of school in the past year. (Exh. 3). The court stated that appellant blamed Damieon's poor attendance on migraine headaches. (Tr. 18, 27). While the court found that Damieon probably experienced some headaches, it further found that Damieon pretended to be sick and appellant deferred to his wishes as to whether he would go to school on various days. (Tr. 27-28). Next, the court noted that appellant brought numerous vials of medicine to court, which she claimed were for Damieon's headaches. (Tr. 68). The court found it curious that when Damieon went to Tennessee for visitation, appellant did not send any medications with him and while in Tennessee, Damieon did not experience any headaches. (Tr. 42-43).
 {¶ 51} The court also discussed the automobile accident in detail. It found that appellant undoubtedly knew Hiatt was intoxicated, although she denied this. (Tr. 74). It also noted that appellant denied that Damieon had a knot on his head from the accident. (Tr. 31). The court found that appellant's denials were not credible and that they called her credibility into question.
 {¶ 52} The court concluded that the shared parenting plan was no longer in Damieon's best interest and terminated the plan. It then determined that the preponderance of the evidence demonstrated that appellee should be named the residential parent and legal custodian.
 {¶ 53} Abuse of discretion is an arduous standard to overcome. Reversal under the abuse of discretion standard, "is appropriate only if the abuse of discretion renders `the result * * * palpably and grossly violative of fact and logic [so] that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.' (Citation omitted.)"Gursky v. Gursky, 11th Dist. No. 2003-P-0010, 2003-Ohio-5697, at ¶ 18, quoting State v. Jenkins (1984), 15 Ohio St.3d 164,222. While this court may have reached a different conclusion, the record supports the trial court's decision. The court based its decision primarily on two factors: the car accident and Damieon's school attendance. Each of the findings the court made is substantiated by at least one witness in the hearing transcript. The court made detailed findings supporting its decision. It considered all of the statutory best interest factors along with other factors it found relevant. It was aware that it was also to consider appellant's status as primary residential parent. But it noted that this was only one factor to consider. Additionally, the court evaluated the parties' credibility and had a chance to talk to Damieon in chambers. We must defer to a trial court on matters of credibility, which are "even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that doesnot translate to the record well." (Emphasis sic.) Davis v.Flickinger (1997), 77 Ohio St.3d 415, 419. Given these considerations, the trial court did not abuse its discretion in terminating the shared parenting plan and awarding custody to appellee. Therefore, appellant's third assignment of error is without merit.
 {¶ 54} Appellant's fourth assignment of error states:
 {¶ 55} "WHEN A MOTION IS FILED IN A CHANGE OF CUSTODY PROCEEDING, IT IS ERROR TO PERMIT EVIDENCE INTO THE RECORD WHICH GOES BEYOND THE SPECIFICS SET FORTH IN THE MOTION."
 {¶ 56} Appellant contends that appellee's motion for a change in custody did not provide her with notice that he intended to address the automobile accident at the hearing. She claims this evidence took her off guard and the court should not have allowed appellee to present such evidence.
 {¶ 57} As addressed in appellant's second assignment of error, appellant failed to object to the car accident testimony and even if she had objected, the court acted within its discretion in admitting such evidence.
 {¶ 58} Furthermore, in his motion for change in custody, appellee stated that since the divorce, he had come into information that made him believe that it was in Damieon's best interest for him to be Damieon's residential parent. He continued:
 {¶ 59} "Specifically, and together with other informationthat will be more fully adduced at the hearing on this cause, the child has had significant problems with school attendance and school performance. * * * Additionally, there are other facts
which will establish a change of circumstances." (Emphasis added.)
 {¶ 60} Hence, appellee stated in his motion that school attendance was only one reason why he filed the motion, putting appellant on notice that other reasons existed that he would bring out at the hearing. Thus, appellant's fourth assignment of error is without merit.
 {¶ 61} For the reasons stated above, the trial court's decision is hereby affirmed.
Judgment affirmed.
Waite, P.J., and Vukovich, J., concur.